UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| R.S., AN INDIVIDUAL,<br><br>Plaintiff,<br><br><br>RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC.<br><br>Defendants. | CIVIL ACTION NO:<br><br><br>JUDGE _____<br><br>**COMPLAINT** |

COMES NOW the Plaintiff R.S., by and through the undersigned counsel, and respectfully submits her Complaint for damages and makes the following averments upon information and belief

## INTRODUCTION

1. This action for damages is brought by R.S. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1591 et seq.

2. Plaintiff R.S. meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her traffickers to engage in commercial sex at the subject hotel owned, controlled and/or operated by Defendants in 2015.

3. Plaintiff was trafficked by three traffickers at Defendants' subject hotel located at 196 Ballard Court, Virginia Beach, VA 23462, beginning in 2015 and continuing for the remainder of 2015.

1

4. During the alleged time period, Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC [collectively referred to as "Red Roof" herein] were franchisors of the subject premises located at 196 Ballard Court, Virginia Beach, VA 23462.

5. Defendants Red Roof owned, supervised, managed, controlled and/or operated the Red Roof Inn located at 196 Ballard Court, Virginia Beach, VA 23462.

6. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil defendants.

7. Plaintiff's three traffickers were males; two were African American and the other Caucasian.

8. Plaintiff's three traffickers were assisted by an entourage of three male associates who assisted the traffickers in operating the sex trafficking business involving Plaintiff on Defendants' subject premises.

9. Plaintiff traffickers were also drug dealers on Defendants' premises during the relevant time period.

10.     One of Plaintiff's traffickers was convicted of (1) sex trafficking, in violation of Code § 18.2-357.1(A), (2) conspiracy to commit sex trafficking, in violation of Code §§ 18.2-22 and 18.2-357.1(A), (3) abduction, in violation of Code § 18.2-47(A), (4) conspiracy to commit abduction, in violation of Code §§ 18.2-22 and 18.2-47(A), and (5) use of a firearm in the commission of abduction, in violation of Code § 18.2-53.1.

## OVERVIEW OF TRAFFICKING

11.     It has been known in the hospitality industry since before R.S. was trafficked that a significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

12.     For decades, sex traffickers have brazenly operated in and out of hotels throughout this country. Traffickers paraded throughout hotels, while hospitality giants, and local owners, stood on the sidelines and did nothing. Instead, hotels and motels paid only lip service to campaigns against sex trafficking and stood by collecting profits from sex trafficking occurring on their premises.

13.     Defendants knew and have known that they profited from sex trafficking occurring on the subject property and under their brand flags.

14.     Rather than taking timely and effective measures to stop profiting from this epidemic, Defendants chose to ignore the open and obvious presence of sex trafficking at the subject property and on their branded properties, benefitting from the profit and fees created by the rooms rented and Wi-Fi provided for this explicit and apparent purpose.

15.     Defendants and other members of the hospitality industry are and have long been aware of the prevalence of human trafficking, particularly sex trafficking, at hotels in general, at the subject hotel, and at Defendants' branded properties. Defendants and others in the industry had

access to much public information on the prevalence of human trafficking at hotels, including reports by, among others, the Polaris Project created for the use of the hospitality industry.

16. Defendants' decision to prioritize profits over protecting sex trafficking victims resulted in the repeated sexual exploitation of R.S. on their subject property.

17. R.S. a survivor of sex trafficking, brings this action for damages against Defendants pursuant to the TVPRA. Defendants knowingly benefitted from participation in a venture that they knew or should have known to be engaging in violations of 18 U.S.C. § 1591(a).

## PARTIES

18. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the safety, privacy and identity of this subject sex trafficked victim. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

19. Plaintiff is currently a resident of Florida.

20. Plaintiff was born in 1991.

21. At all times relevant and material, Defendant BW owned and operated, or co-operated, a hotel doing business as Red Roof Inn and located at 196 Ballard Court, Virginia Beach, VA 23462 and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

22. At all times relevant and material, Defendant RRI operated a hotel doing business as Red Roof Inn located at 196 Ballard Court, Virginia Beach, VA 23462 and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

4

23. Defendant Red Roof Franchising, LLC ("RRF") is a Delaware limited liability company with its corporate headquarters and principal place of business in Ohio.

24. Defendant Red Roof Inns, Inc. is a Delaware corporation with its principal place of business in Ohio. Defendant Red Roof Inns, Inc. is a publicly traded company. The company provides franchise opportunities to its hotels and motels through Defendant Red Roof Franchising LLC. (together Red Roof Inns, Inc. and Red Roof Franchising LLC., will be referred to as "Red Roof"). Red Roof purchases, owns and manages a network of hotels and motels globally, primarily in the Midwest, Southern and Eastern United States. Red Roof serves customers throughout the United States and other countries throughout the world.

25. Red Roof is a global hotel brand with approximately 650 branded properties worldwide. It is a Delaware corporation, with its corporate headquarters and principal place of business at 7185 Walton Pkwy, New Albany, Ohio 43054.

26. Red Roof maintains a registered agent in Ohio, and it can be served through its registered agent, i.e., Corporation Service Company, at 3366 Riverside Dr. Suite 103 Upper Arlington Ohio 43221.

27. Defendant Red Roof owns, supervises, manages, control and/or operates the Red Roof Inn located at 196 Ballard Court, Virginia Beach, VA 23462 ("Virginia Beach Red Roof Inn or "branded property" or "subject hotel"):

   a. The Virgina Beach Red Roof Inn is a Red Roof Inn branded property;

   b. Red Roof employees work throughout the Virginia Beach Red Roof Inn. Red Roof employees work jobs including front desk and housekeeping;

   c. Red Roof is the principal with control over nearly every element of operations at the

5

Virginia Beach Red Roof Inn. Red Roof is liable, directly, vicariously or indirectly through an agency relationship for the acts and/or omissions of the employees at its branded hotels, including the Virginia Beach Red Roof Inn where R.S. was trafficked. Red Roof has an actual and apparent agency relationship with the physical property owner of the Virginia Beach Red Roof Inn as to establish vicarious liability;

d. Red Roof controlled and dictated the actions and inactions of the Virginia Beach Red Roof Inn through highly specific and detailed brand standards, policies and procedures;

e. Red Roof knowingly benefitted, or received something of value, from tis ventures at the Virginia Beach Red Roof Inn through royalty payments, licensing fees, and percentages of gross room revenue generated by the hotel operations including rates charged through rooms where R.S. was trafficked, as well as maintaining a positive public image for the Red Roof Inn brand. Red Roof also benefitted from gathering personal data from the Wi-Fi it provided to customers including R.S. and her trafficker;

f. Red Roof is subject to the jurisdiction of this Court because its corporate offices are headquartered in this district. In addition, Red Roof regularly conducts business in Ohio, including through the operation of numerous hotels in Ohio, contracting to supply services in Ohio. Red Roof has derived substantial revenue from services rendered in Ohio; and

g. Whenever reference is made in this Complaint to any act, deed, or conduct of Red Roof, the allegation is that Red Roof engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Red Roof.

## JURISDICTION AND VENUE

28. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

29. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) because pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the Southern District of Ohio and all defendants are residents of the State of Ohio.

30. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Court asserted in this action occurred in the judicial district where this action was brought and/or Defendants conduct business within this district pursuant to 28 U.S.C. § 1391(b).

31. The principal place of business of Defendant Red Roof Inns, Inc., is located at 7185 Walton Pkwy, New Albany, Ohio 43054.

32. The principal place of business of Defendant Red Roof Franchising LLC is 605 South Front Street, Columbus, Ohio 43215.

33. Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC participated in a joint venture operating the subject hotel from a central location at Defendants corporate headquarters located at 7185 Walton Pkwy, New Albany, Ohio 43054 within the Southern District of Ohio. On information and belief:

   a. The relationship between the RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC was centered at the aforesaid corporate office in the Southern District of Ohio;

    b. Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC signed agreements with one another related to the subject hotel from the aforesaid corporate headquarters in the Southern District of Ohio;

    c. Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC exercised joint control over operations of the subject hotel from a central location at the aforesaid corporate offices in the Southern District of Ohio;

    d. Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC distributed revenue earned from the subject hotel among themselves from the aforesaid corporate headquarters in the Southern District of Ohio;

    e. Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC developed policies for the subject hotel from the aforesaid corporate headquarters in the Southern District of Ohio;

    f. Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC communicated with one another regarding the operation of the subject hotel from the aforesaid corporate headquarters in the Southern District of Ohio.

**RED ROOF**

34. Red Roof exercises day-to-day control over the Virginia Beach Red Roof Inn and its other brand hotels through centralized corporate systems, training, policies and brand standards. Red Roof implements and retains brand hotel control, including control over the Virginia Beach Red Roof Inn, as either direct subsidiaries or under terms of its franchise agreements.

35. Red Roof controls the operation of its branded properties, including the subject hotel, through a variety of means enforced through franchise agreements and related contracts and

8

monitors compliance, including but not limited to:

a. Providing and requiring the use of software, hardware and platforms where data and information is shared with Red Roof corporate and monitors compliance;

b. Providing and requiring the use of reservation platforms where payment modes and suspicious reservations would suggest trafficking and monitors compliance;

c. Providing training and education to branded hotels through webinars seminars, conferences and online portals;

d. Providing and controlling customer review and response platforms and monitors compliance;

e. Monitoring customer reviews and response platforms;

f. Hosting and monitoring online bookings on Red Roof's domain;

g. Requiring the use of Red Roof's online bookings;

h. Monitoring online bookings;

i. Requiring branded hotels to use Red Roof's customer rewards program;

j. Monitoring branded hotels to use Red Roof's customer rewards program;

k. Requiring branded hotels to use Red Roof's property management software;

l. Requiring branded hotels to use approved vendors for internet services or other requirements for Wi-Fi access and filtering;

m. Providing IT support for all property management systems, owned, operated and required by Red Roof;

n. Setting employee wages;

  o. Sharing profits;

  p. Standardizing training methods for employees;

  q. Building and maintaining the facility in a manner specified by the owner;

  r. Standardized or strict rules of operation;

  s. Regular inspection of the facility and operation by the owner, and

  t. Fixing prices.

36. Red Roof manages and monitors compliance of corporate training, policies and procedures on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems with back-end management by Red Roof.

37. Red Roof controls and monitors compliance of uniform and required reservation, marketing, customer support systems and loyalty programs at its brand hotels, including the Virgina Beach Red Roof Inn. Red Roof also advertises its brand hotels through national press releases, newsletters, emails, announcements on redroof.com, and mentions across its corporate medial channels.

38. Red Roof requires its hotels to use a consolidated IT system and database for property management, credit processing and centralized billing, as well as problem-tracking to ensure all problems are resolved promptly and that emergencies are escalated and monitors compliance.

39. Red Roof posts job openings for its branded properties on its central career positing website.

## CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

40. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against Defendants.

41. The TVPRA prohibits Defendants from profiting from any venture they know or should have known involves a violation of § 1591 and thereby establishes a non-delegable duty of reasonable care.

42. Plaintiff was trafficked at Defendants' subject hotel commencing in 2015 and continuing for remainder of 2015.

43. At all relevant times, Defendants Red Roof were involved in the staffing and day-to-day operation of the subject hotel where Plaintiff was trafficked for sex during the relevant time period of ownership in 2015.

44. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at Defendants' subject hotel, her traffickers used various means to do so including (a) traffickers instilled in Plaintiff the fear of severe bodily injury and fear of death if traffickers' directives were not complied with; (b) drug manipulation (e.g. heroin), (c) psychological coercion;  and (d) other means of force, fraud and coercion used by the trafficker of Plaintiff to induce her to have sex with sex buyers at the subject hotel.

45. Rooms rented for use for the trafficking of Plaintiff on Defendants' premises were rented by Plaintiff's traffickers or at the direction of the traffickers.

46. Discovery will inform whether the traffickers, (or individuals at the traffickers' direction), booked rooms at the subject hotels that were used for the sex trafficking of the Plaintiff in violation of the TVPRA:

11

   a. Under the registrant's proper legal name or a false name;
   b. Whether cash, prepaid card, debit card or credit card was used at the time of respective booking or renewal; and
   c. Whether staff of Defendant required for each booking that the renter show their identification.

47. Defendants Red Roof knowingly benefited from the sex trafficking of Plaintiff at Defendants' subject hotel by receiving payment and royalties for the rooms rented by Plaintiff's traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA in 2015.

48. Defendants Red Roof rented rooms to individuals it knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

49. Plaintiff's traffickers took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for rooms rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

50. Plaintiff's traffickers advertised her online for sex which was to occur at Defendants' subject hotel premises including, at times, on Backpage and upon information and belief on other similar type websites.

51. Defendants Red Roof received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her traffickers online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

52. During the relevant time period alleged herein, Defendants Red Roof took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's traffickers that violated the TVPRA.

12

53. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

54. Defendants Red Roof operating the subject hotel and renting out rooms to Plaintiff's traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

55. Defendants Red Roof association with the Plaintiff's sex traffickers was a venture because Plaintiff's traffickers had prior commercial dealings with said Defendant at the subject hotel premises by means of rooms repeatedly rented, or repeatedly renewed, by the trafficker (or at the direction of the trafficker) during the time period of Plaintiff's trafficking, which said Defendant knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit

56. Defendants Red Roof repeated rental of rooms to Plaintiff's traffickers (or an individual renting at the direction of the traffickers), at the subject hotel, was not a standard arm's length transaction, but rather the repeated room rental and renewal transactions which occurred during time that Plaintiff was trafficked at the subject hotel, were colored by overt indicators of sex trafficking such that said Defendant knew, or should have known, that said Defendant was renting rooms to individuals engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

57. A continuous business relationship existed between Defendants Red Roof, its agents, employees and staff, and Plaintiff's traffickers' sex trafficking business, in part, in that said Defendant provided assistance, support, or facilitation to the Plaintiff's trafficker by repeatedly renting rooms, or renewing room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the venture's success.

58. Defendants Red Roof knowingly benefited from this venture, or enterprise, involving risk and potential profit, which was in violation of the TVPRA as to the Plaintiff herein, by receiving payment for the rooms rented by Plaintiff's traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in 2015.

59. Defendants Red Roof participated in a venture by operating the subject hotel that rented rooms to individuals that said Defendant knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

60. Defendants Red Roof participated in a venture that said Defendant knew or should have known was trafficking Plaintiff at the subject hotel in violation of the TVPRA.

61. Defendants Red Roof knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as to the Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

   a. Constant foot traffic of sex buyers to the trafficker's rented rooms to have sex with Plaintiff;

   b. Visible physical deterioration of Plaintiff from trafficking and traffickers' abuse;

   c. Suspicious foot traffic of individuals coming to purchase heroin or cocaine from Plaintiff's traffickers on defendant's premises during relevant time period;

   d. Traffickers and entourage members high on heroin or cocaine on the premises; primarily heroin;

   e. Traffickers had two adjacent rooms rented simultaneously;

   f. Traffickers modus operandi was to renew hotel rentals daily;

   g. Plaintiff's three traffickers were assisted by an entourage of three male associates

who assisted the traffickers in operating the sex trafficking business involving Plaintiff on Defendant's subject premises;

h. Plaintiff traffickers were also drug dealers on Defendant's premises during the relevant time period dealing heroin and cocaine;

i. Suspicious individuals loitering outside room where sex trafficking of plaintiff was occurring;

j. Traffickers did not allow housekeeping to enter rooms during entire period;

k. Plaintiff made three escape attempts traversing Defendants' premises while drug impaired (e.g. heroin), sleep deprived, hygiene impaired, behavior impaired, with malnourished, and in sexually explicit clothing;

l. Plaintiff traffickers forcefully escorted Plaintiff back on to Defendants hotel premises after a failed escape attempt with this group of suspicions people walking in an unusual formation on the subject premises with Plaintiff accompanied by two individuals on each side of her, two in front of her and one behind her;

m. Inside the hotel rooms rented by the traffickers (or at the direction of the traffickers) there were suspicious people and suspicious items including cash, drugs, drug paraphernalia, and condoms;

n. Loud noise and yelling emanating from room where sex trafficking of plaintiff was occurring;

o. A detective from the Virginia Police Department Special investigations unit stated that sex traffickers often rent two hotel rooms; one for sex trafficking and the other to be used by traffickers; and

    p. Other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

62. Defendants Red Roof staff witnessed and observed on a frequent basis signs and indicators of sex trafficking including items set forth paragraph 102 above.

63. When being trafficked at Defendant's subject hotel in 2015, staff of Defendants Red Roof witnessed her traffickers and their entourage as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

64. Defendants failure, by their respective agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by PTSD.

65. Defendants Red Roof, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

66. Plaintiff being sex trafficked at Defendants' hotel was a proximate cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

67. As a direct and proximate result of Defendants Red Roof involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the TVPRA.

68. As a consequence of being sex trafficked at Defendants' subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## TOLLING OF LIMITATIONS

69. To the extent Defendants assert an affirmative defense of limitations, R.S. invokes the discovery rule. At the time she was harmed and through 2015, R.S. was under the coercion and control of her trafficker who drugged her, threatened her, psychologically abused her, exercised coercive control over her, and severely restricted her freedom. As a result, R.S. lacked the information and capacity to understand her injuries and their legal causes.

70. Thus, R.S. did not discover and could not reasonably have discovered the legal cause of her injury—through no fault of her own—lacked the information and understanding to bring a claim because she did not know both her injury and the cause of her injury. This lack of

information was a direct result of R.S. being kept under the control, coercion, and manipulation of her trafficker, which Defendants facilitated.

71. At the time R.S. was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being "trafficked" at Defendants' hotels or that she was a person "trafficked," much less that she was the "victim" of a legal venture involving Defendants, and she did not discover and was not in a position to discover the legal cause of her injury for years after her trafficking ended.

72. To the extent Defendants assert an affirmative defense of limitations, R.S. invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before R.S. filed this lawsuit.

73. While under the control of her trafficker through at least 2015, R.S. did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation necessary to pursue her legal rights. R.S. could not have pursued her claims while under the active control of her trafficker despite the exercise of ordinary diligence.

74. To the extent Defendants assert an affirmative defense of limitations, R.S. invokes the continuing violation doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendants, individually and in concert, across the subject locations.

75. R.S. was subject to continuous trafficking at the subject property through at least the end of 2015, which is not more than 10 years before R.S. brings this lawsuit.

76. This continuous trafficking resulted from Defendants' facilitation of trafficking at the subject property and Defendants' ongoing ventures with one another and with criminal traffickers

at that hotel.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;

b) All available noneconomic damages, including without limitation conscious pain, conscious suffering, and loss of enjoyment of life;

c) Physical pain and suffering

d) Mental anguish and emotional distress damages

e) Consequential and/or special damages;

f) Disgorgement of profits obtained through unjust enrichment;

g) Restitution;

h) All damages allowable under the TVPRA;

i) Punitive damages

j) Reasonable and recoverable attorney's fees;

k) Costs of this action; and

l) Pre-judgement and all other interest recoverable

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 25, 2025

Respectfully submitted,

        <u>s/ *Penny L. Barrick*</u>
Penny L. Barrick, (0074110)
**Babin Law, LLC**
10 W Broad Street
Suite 900
Columbus, Ohio 43215
Phone: 614.761.8800
Direct: 614.372.6404
Cell: 614.747.6184
Fax: 614.706.1775
penny.barrick@babinlaws.com
*Trial Counsel for Plaintiff*

Randolph Janis, Esq.
**DOUGLAS AND LONDON, P.C.**
(PHV motion forthcoming)
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com


***Attorneys for Plaintiff***